U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 26, 2025

**VIA ECF**
The Honorable J. Paul Oetken
United States District Judge
United States District Court
40 Foley Square
New York, New York 10007

      Re:    *Widakuswara,* et al. v. *Lake*, et al.,
             25 Civ. 2390 (JPO)

Dear Judge Oetken:

      On behalf of defendants U.S. Agency for Global Media ("USAGM"), Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of USAGM, and Victor Morales, in his official capacity as Acting CEO of USAGM (collectively, the "Government" or "Defendants"), we write respectfully to request that, based on developments in other related cases pending in the U.S. District Court for the District of Columbia ("DDC") yesterday afternoon and this morning, this Court should transfer this matter to DDC. Plaintiffs' counsel objects to this request.

**A.    Background and Procedural History**

      The instant matter is one of four pending matters challenging the Government's actions with respect to USAGM's efforts to reduce the agency's size and operations pursuant to Executive Order 14238's directive that USAGM's "USAGM's "non-statutory components and functions" be eliminated and that its "performance of [its] statutory functions and associated personnel" be reduced to "the minimum presence and function required by law." Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025).

      As this Court is aware, on March 21, 2025, plaintiffs—comprised of several full-time employees and personal service contractors of the Voice of America ("VOA"), a director of USAGM, a non-profit organization, and four labor organizations—sued defendants Lake, Morales, and USAGM for allegedly placing employees and contractors on paid administrative leave, temporarily ceasing broadcasting and programming operations, and terminating grant agreements. Plaintiffs have: asserted violations of the First Amendment, the Separation of Powers Clause, and the Appointments Clause of the constitution; violations of Sections 706(1) and 706(2) of the Administrative Procedure Act; alleged that defendants breached the "statutory firewall" set forth in 22 U.S.C. §§ 6202, 6204; seek relief under the Mandamus Act and the All Writs Act; and alleged that defendants acted in an *ultra vires* manner. *See generally* Compl. (ECF No. 1). Plaintiffs have filed a motion for a preliminary injunction and a temporary restraining order ("TRO") enjoining defendants "from taking any further actions to implement or effectuate the March 14, 2025 and March 15, 2025 Actions as to USAGM, or take any action to reduce USAGM's workforce" and terminating any USAGM grant or contract or proceeding with the termination of any USAGM personal services contractors. *See* ECF No. 15, at 3.

As described more fully below, the other three matters present overlapping claims and requests for relief, and all are pending before the same adjudicator, U.S. District Judge Royce Lamberth in the DDC.

1. *RFE/RL, Inc. v. Lake*, 25 Civ. 779 (D.D.C.)

On March 18, 2025, plaintiff Radio Free Europe/Radio Liberty ("RFE/RL"), a private grantee operatingwhich operates under USAGM grants, filed a complaint against defendants Lake, Morales, and USAGM in the DDC. *See generally* Complaint, *RFE/RL, Inc. v. Lake*, 25 Civ. 799 (D.D.C.), ECF No. 1. This matter was assigned to District Judge Lamberth. The *RFE/RL* complaint alleged that defendants' withholding of plaintiff's congressionally appropriated funding: was both arbitrary and capricious and contrary to law under Section 706(2) of the APA; constituted an unlawfully withheld or unreasonably delayed action under Section 706(1) of the APA; violated the Separations of Powers, the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the Constitution; sought relief under the Mandamus Act and the All Writs Act; and alleged that defendants' acts were *ultra vires*. *Id.* Following briefing and a hearing on plaintiff's motion for a TRO, on March 25, 2025, Judge Lamberth granted the motion and entered a TRO ordering the defendants and their agents to "take no steps and impose no obligations relating to closing out the plaintiff's grant," and directing the parties to complete briefing on plaintiff's motion for a preliminary injunction by this Friday, March 28, 2025. *See* Order dated Mar. 25, 2025 in 25 Civ. 799 (RCL), at ECF No. 14. Today's TRO in *RLE/RL* effectively moots that part of plaintiffs' proposed TRO in this case which seeks an order enjoining defendants "from taking any further actions to implement or effectuate the March 14, 2025 and March 15, 2025 actions as to USAGM, or take any action to USAGM's workforce," including its grantees. *See* ECF No. 15, at page 3.

2. *Open Technology Fund. v. Lake*, 25 Civ. 840 (D.D.C.)

On March 20, 2025, plaintiff Open Technology Fund, another private grantee operating under USAGM grants, filed suit in the DDC against defendants Lake, Morales, USAGM, and the Office of Management and Budget, challenging a March 15, 2025 letter from defendant Lake to plaintiff purporting to terminate all grant funding from the agency to plaintiff. *See generally* Complaint, *Open Technology Fund v. Lake*, 25 Civ. 840 (D.D.C.) (ECF No. 1). This matter was designated as related to *RLE/RL* and was assigned to Judge Lamberth. Plaintiff asserted claims under Sections 706(1) and 706(2) of the APA, violations of the Presentment Clause, the Appropriations Clause, the Spending Clause, the Take Care Clause, and the Separation of Powers Clause under the Constitution, claims under the Mandamus Act and All Writs Act, and alleged that defendants acted in an *ultra vires* manner. *Id.* Plaintiff also filed a motion for a TRO, which has been fully briefed, and is scheduled for a hearing before Judge Lamberth tomorrow, March 27, 2025. Among other relief, plaintiff's proposed TRO seeks to enjoin defendants from not impounding plaintiff's Congressionally-appropriated grant funds and to take no steps to close out its grant, which overlaps with the relief sought by plaintiffs in this case. *See* Proposed Order Granting Plaintiff's Motion for a TRO*,* 25 Civ. 840 (RCL) (D.D.C.), filed at ECF No. 4-5.

    3.    *Abramowitz v. Lake*, 25 Civ. 887 (D.D.C.)

Today, March 26, 2025, plaintiffs Michael Abramowitz, in his official capacity as the current director of the VOA, plaintiff Anthony Michael LaBruto, a journalist in the Africa Division of VOA, and two John Doe plaintiffs—both journalists for foreign divisions of VOA—filed suit against the same three defendants in this matter in the DDC. Their complaint asserts nearly-identical claims to those filed in the instant case, alleging that defendants violated the APA, the Presentment Clause, the Spending Clause, the Appropriations Clause, and the Take Care Clause of the Constitution, and also acted in an *ultra vires* manner. *See generally*, Complaint in *Abramowitz v. Lake*, 25 Civ. 887 (D.D.C.), ECF No. 1.

The *Abramowitz* plaintiffs further filed a motion for a TRO and a preliminary injunction against defendants today. *Id.* at ECF No. 4. The proposed TRO in *Abramowitz* would direct defendants to "cancel their orders putting approximately 1,300 VOA employees on administrative leave, cancel the termination of personal services contracts with approximately 500 employees, cease dismantling Voice of America, and restore VOA's personnel and operating capacities such that the entities may continue their statutorily required broadcasting activities." *Id.* at ECF No. 4-9. The *Abramowitz* matter has been designated as related to the *RLE/RE* matter, and is also assigned to Judge Lamberth. Earlier today, the Chief Judge of the DDC granted plaintiffs' motion to permit the two John Doe plaintiffs to proceed pseudonymously, pending further action by Judge Lambeth. *Id.* at Minute Order dated Mar. 26, 2025. Later in the day, Judge Lambert also entered a minute order directing defendants to file a response to the TRO motion by March 28, 2025, at 1:00 p.m. *Id.* at Second Minute Order dated Mar. 26, 2025

**B.    The Court Should Transfer This Action to the District of Columbia Under 28 U.S.C. § 1404(a) for the Convenience of Parties and Witnesses**

This Court should transfer this action to DDC. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (internal citation and quotation marks omitted).

In deciding a motion to transfer venue, courts engage in a two-part inquiry. *See Burgos v. United States*, 16 Civ. 7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017). "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Id.* (internal citation and quotation marks omitted). "Second, the court must…determine whether transfer is appropriate." *Id.* (internal citation and quotation marks omitted). In determining whether transfer is appropriate, courts in this District consider the following factors:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Schuyler v. Sun Life Assurance Co. of Canada*, 20 Civ. 10905 (RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021) (internal citation omitted). The party requesting the transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence. *See id.* at 2 (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

There can be no dispute that plaintiffs could have filed this action in DDC. The decisions and actions of USAGM, Lake, and Morales that Plaintiffs challenge all occurred in DDC, all defendants are located in DDC, and 11 of the 14 plaintiffs in this case reside or are headquartered in DDC or in Virginia. Compl. ¶¶ 17-19, 22, 24, 27, 28. Only two of the individual plantiffs, John Does 1 and 2, claim to be residents of New York County, *id.* ¶¶ 20-21, and plaintiff John Doe 4 claims to be a resident of Queens County, in the Eastern District of New York. *Id.* ¶ 23. Moreover, USAGM has informed this Office that the agency has employed approximately 1,042 full-time federal employees and approximately 475 personal service contractors who are located in the DDC area, while it employs only 14 full-time employees and approximately only 25 personal service contractors who are located in the New York City area. Because plaintiffs clearly could have brought this action in DDC under these circumstances, the Court should evaluate the relevant factors which, as articulated below, overwhelmingly weigh in favor of transfer to the DDC.

### 1. Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Schuyler*, 2021 WL 5853991, at *3 (internal citation and quotation marks omitted). Courts must consider the "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) (internal citation and quotation marks omitted). Moreover, while it is possible to take the testimony of material witnesses by video, it is "far from optimal." *See e.g.*, *Williams v. Swack*, No. 12-cv-1552 (CBA), 2013 WL 5423791, at *5 (E.D.N.Y. Sept. 26, 2013).

Based on plaintiffs' claims in this case, USAGM officials and employees with knowledge of the events at issue in this matter are located in the District of Columbia. While it is sometimes presumed that employees of the Government are available in any venue, this does not diminish the burden on the Government to produce any witnesses for depositions and for trial in New York. Therefore, consideration of this factor favors transfer. *See Ruiz ex rel. E.R. v. United States*, No. 13-cv-1241 (KAM) (SMG), 2014 WL 4662241, at *11-13 (E.D.N.Y. Sept. 18, 2014) (transferring FTCA case to the Eastern District of Virginia where plaintiff alleged that CBP improperly detained minor at Washington Dulles International Airport when, among other things, none of the eight CBP officers who had first-hand knowledge of the events resided in New York).

### 2. Locus of Operative Events

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, No. 21-cv-87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021) (internal citation and quotation marks omitted). Transfer to the district where the operative events occurred serves "the interests of justice." *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745

(S.D.N.Y. 2013) (internal citation and quotation marks omitted).  Other than the alleged residence of plaintiffs John Does 1 and 2, "nothing connects this case to New York." *Larca v. United States*, No. 11-cv-3952 (JMF), 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012).  This factor weighs heavily in favor of transfer.

### 3. This Forum's Familiarity with the Governing Law

Although this Court is familiar with the APA, the First Amendment, and other constitutional clauses and federal statutes, given the earlier filing dates of *RLE/RL* and *Open Technology Fund*, Judge Lamberth has already received full briefing and argument on defendants' actions in *RLE/RL*, granted a temporary restraining order, and has directed that plaintiff's preliminary injunction motion be fully briefed by March 28, 2025.  He has also scheduled a hearing on plaintiff's temporary restraining order in *Open Technology Fund* tomorrow, and directed defendants to file a response in *Abramowitz* on March 28, 2025.  Given Judge Lambert's head start with the operative facts and legal issues in these cases, this factor weighs in favor of transfer.

### 4. The Location of Sources of Proof

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."  *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012) (internal citation and quotation marks omitted).  In this case, however, because plaintiffs' allegations are centered exclusively on USAGM's decisions, any records relating to the agency's compliance with Executive Order No. 14238 are located in the DDC.  Therefore, consideration of this factor weighs in favor of transfer.

### 5. Plaintiffs' Choice of Forum

Although a plaintiff's choice of forum is generally entitled to considerable weight, the significance is diminished where, as here, "the operative facts upon which the litigation is brought bear little material connection to the chosen forum."  *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009) (internal citations and quotation marks omitted); *see also Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991).  The only nexus between this action and the Southern District of New York is the presence of two John Doe plaintiffs in this district and several New York City attorneys who have entered notices of appearances on behalf of plaintiffs in this case.  Because of the "tenuous connection between the plaintiff's claims and the Southern District of New York . . . the plaintiff's selection of this forum has an artificial quality that entitles a court to give it less weight."  *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998).

### 6. The Relative Means of the Parties

 A party arguing against transfer because of inadequate means must offer documentation to show that transfer would be unduly burdensome on his finances.  *See It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010).  Given that the vast majority of plaintiffs and all defendants are situated in Washington, D.C., and plaintiffs are represented by

attorneys located in Washington, D.C. and New York City, *see* Docket Sheet in *Widakuswara v. Lake,* 25 Civ. 2390, a transfer to the DDC would not be unduly burdensome on plaintiffs' finances.

7. **Availability of Process to Compel Attendance of Unwilling Witnesses**

The Government is currently unaware of any potential non-party witnesses who may be unwilling to travel to New York; therefore, consideration of this factor is neutral. *See Martignago v. Merrill Lynch & Co.*, No. 11-cv-3923 (PGG), 2012 WL 112246, at *8 (S.D.N.Y. Jan. 12, 2012).

8. **Convenience of Parties**

"When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." *Royal & Sun Alliance Ins. PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016) (citing cases). As noted above, all but three individual plaintiffs, all defendants, and the vast majority of USAGM employees and contractors have their principal places of business, residences, and office locations in or around Washington, D.C. Accordingly, this factor weighs in favor of transferring this matter to the DDC.

9. **Trial Efficiency and the Interests of Justice**

The Supreme Court has recognized that construing § 1404 to "permit[] or require[] parties to try their issues in a single 'civil action' in a court where it 'might have been brought' . . . merely carries out [the statute's] design to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960). And as this Court has observed, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (citing cases). Indeed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the [same] time serving the public interest; [and] (4) inconsistent results can be avoided." *Richardson v. City of New York*, 87 Civ. 214 (RR), 1988 WL 156324, at *4 (S.D.N.Y. Oct. 14, 1988) (citations omitted). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co.*, 364 U.S. at 26.

The interests of justice would be best served by transferring this matter to the DDC, where all of the actions giving rise to plaintiffs' claims occurred, the vast majority of witnesses and parties are located, and where there are three related cases before the same judge who has already issued a TRO in one case, scheduled argument in another case for tomorrow, and has directed defendants to respond to a third TRO motion by March 28, 2025, at 1:00 p.m. Moreover, while the proposed TROs in all four cases seek overlapping relief, there are material differences in the wording of each order creating the potential for defendants to be subject to

inconsistent obligations, all of which can be resolved readily by a single judge in the same tribunal.

      Finally, transfer of this action to the DDC would not hinder trial efficiency and the interests of justice because this case is in the early stages of litigation. *See Dickerson v. Novartis Corporation*, 315 F.R.D. 18, 32-33 (S.D.N.Y. 2016) (granting motion to transfer where "the case remains in the early stages of litigation" and "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work") (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000)).

      We thank the Court for its consideration of this letter.

      Respectfully submitted,

      MATTHEW PODOLSKY
      Acting United States Attorney

By:   */s/ Tomoko Onozawa*
      DANIELLE J. MARRYSHOW
      TOMOKO ONOZAWA
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, New York 10007
      Tel.: (212) 637-2689/2721
      E-mail:   danielle.marryshow@usdoj.gov
                    tomoko.onozawa@usdoj.gov

cc:    All Counsel of Record (via ECF)